IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH WALTHOUR,                         :
                                         :
    Plaintiff,                           : CIVIL NO. 3:CV-07-0528
                                         :
  vs.                                    : (JUDGE VANASKIE)
                                         :
FRANKLIN J. TENNIS, et al.,              :
                                         :
    Defendants.                          :

M E M O R A N D U M

I.    Introduction

Joseph Walthour filed this civil rights action on March 20, 2007, pursuant to 42 U.S.C. § 1983. At the time he was confined at the State Correctional Institution at Rockview (SCI-Rockview), but has since been transferred to the Joseph E. Coleman Community Corrections Center in Philadelphia, Pennsylvania. Walthour names sixteen (16) Defendants, comprised of Pennsylvania Department of Corrections' officials, including SCI-Rockview staff. Plaintiff alleges that Defendants issued misconducts against him on four (4) occasions in retaliation for his pursuit of a civil rights action in this Court.[1] As a result of the misconducts, he claims he also received unfavorable parole recommendations from the prison. Plaintiff further contends

---

[1] The civil rights action to which Walthour refers is Walthour v. Tennis, et al., Civil Action No. 3:06-CV-86, filed on January 12, 2006, and presently pending before the Court.

that the procedures following the issuance of the misconducts violated his procedural due process rights. Presently pending and ripe for disposition is Defendants' motion to dismiss the complaint in part. (Dkt. Entry 13.) For the reasons that follow, the motion will be granted.

II.     Background

On January 12, 2006, Plaintiff filed a civil rights action in this Court. He claims that the Defendants in that action were served with the complaint in May of 2006. On July 1, 2006, Plaintiff received misconduct report A903002, issued by Corrections Officer Roberts, for charges of contraband, loaning and borrowing, and a violation of any rule or regulation in the Inmate Handbook (excessive cigarettes). Defendant Glunt investigated and logged the misconduct. According to Plaintiff, Glunt falsified the seriousness of the offenses, thereby preventing the charges from being referred for informal resolution.

Plaintiff alleges he received a second misconduct (A903140) on July 23, 2006, issued by Corrections Office Moore. In the misconduct Plaintiff was charged with possession of contraband and taking unauthorized food from the dining room. The same day, Defendant Bechdel investigated the report and, according to Plaintiff, falsified the misconduct by stating Plaintiff had been charged with the same offense on July 1, 2006 not referred for informal resolution. The following day, Plaintiff states he was ordered to pack his personal belongings and report to the property room. He thereafter filed a grievance alleging retaliation – being transferred for filing grievances and civil rights litigation against prison officials.

On July 25, 2006, Plaintiff was temporarily transferred to the State Correctional Institution at Smithfield and placed in administrative custody. The following day, Defendant Stidd conducted a hearing at SCI-Rockview with respect to misconduct A903140, and found Plaintiff guilty. A sanction of thirty (30) days punitive confinement was imposed, effective August 7, 2006. Plaintiff contends that the hearing violated his procedural due process rights in that Defendants had full knowledge he had been transferred to SCI-Smithfield and had not waived his physical appearance at the hearing.

On August 1, 2006, Plaintiff was returned to SCI-Rockview and housed in the general population, and his custody level was increased from Level 2R to Level 3. On August 7, 2006, he was escorted to a disposition hearing regarding misconduct A903140. At this time Plaintiff objected to the hearing since it did not occur within seven (7) days from the date he was served with the misconduct.

Defendant Stidd responded by stating that the hearing had originally been scheduled for July 26, 2006, but continued pending Plaintiff's return, once it was realized he was unavailable. At this point, Plaintiff was transferred to the punitive confinement in the Restricted Housing Unit to serve his thirty (30) day sanction.

On August 8, 2006, the SCI-Rockview parole office forwarded to Plaintiff a decision that had been rendered by the Pennsylvania Board of Probation and Parole (PBPP) to reparole him. On August 15, 2006, Plaintiff filed an appeal in misconduct A903140 hearing to the Program

3

Review Committee (PRC).  The PRC members consisted of Defendants Dickson, Smith and Gentzel.  A decision was issued by the PRC on August 24, 2006, upholding the Hearing Examiner's decision on the misconduct.  An appeal was thereafter submitted by Plaintiff to Defendant Tennis.  On August 31, 2006, Defendant Rackovan responded to the appeal, finding that Hearing Examiner Stidd had seven (7) working days upon Plaintiff's return from SCI-Smithfield to hold the dispositional hearing on the misconduct.  On September 7, 2006, Plaintiff pursued an appeal to Defendant Bitner, the final level of appeal.

On September 9, 2006, Plaintiff received a third misconduct (#A796051), issued by Corrections Officer Barney.  The charges consisted of refusing to obey an order, taking unauthorized food from the dining room, and not having an I.D. card.  Plaintiff claims that Defendant McMahan investigated the charges and abused his authority by failing to list the charges as minor, thereby depriving him of informal resolution.  He claims that on September 13, 2006, following disposition of the misconduct, he was sanctioned to thirty (30) days cell restriction by Defendant Kerns-Barr.  Thereafter, Defendant Bitner concurred with Kerns-Barr in a decision rendered on Plaintiff's appeal.

Plaintiff received a fourth misconduct report (#A919198) on December 18, 2006.  The charges included threatening an employee or his/her family member with bodily harm, refusing to obey an order, use of abusive, obscene or inappropriate language to an employee, and presence in an unauthorized area.  Defendant Leidhecker was the reporting staff member.

Defendant Glunt was responsible for investigating the misconduct.  According to Plaintiff, following Glunt's investigation, he ordered Plaintiff transferred from general population to solitary confinement pending disposition of the charges, labeling Plaintiff as a threat to staff.

Plaintiff states that on the same date, he submitted a form requesting the appearance of three (3) witnesses – all staff members – at the dispositional hearing to be conducted on the misconduct.  The hearing was conducted before Defendant Kerns-Barr on December 20, 2006, and Plaintiff was in attendance.  He claims that Kerns-Barr unlawfully refused to allow him to present his witnesses.  Plaintiff was found guilty on all charges, with the exception of the threatening an employee charge, and sanctioned to sixty (60) days punitive confinement effective December 18, 2006, as well as the loss of his prison job.

This decision was appealed to the PRC on January 1, 2007.  The members of the PRC consisted of Defendants Dickson, Lamas and Smith.  The decision of the Hearing Examiner was sustained by both the PRC, and thereafter by Defendant Tennis.[2]  He claims he thereafter appealed to Defendant Bitner both the issues of due process violations and the PRC's refusal to transfer him back to general population after serving thirty (30) days on the sixty (60) day sanction since he was listed on the "Honor Roll List" by the punitive confinement housing unit

---

[2] Plaintiff also alleges a due process violation based upon Defendant Tennis' failure to provide him with a written response to his appeal within seven (7) days.  According to Plaintiff, he should have received a decision by January 22, 2007, and did not receive it until February 2, 2007, in violation of DC-ADM 801.

staff, and ended up spending fifty (50) of the sixty (60) days there.  On February 16, 2007, Defendant Mark responded to the appeal.  Plaintiff claims Mark ignored and failed to address the issues.

Plaintiff also adds that on January 17, 2007, he received a decision by the PBPP to rescind the reparole decision of July 31, 2006, based upon the misconducts Plaintiff had since received, and the fact that Defendants Tennis, Dickson and Smith had rescinded their support of the decision to reparole Plaintiff.

Plaintiff asserts that Defendants retaliated against him for filing a civil rights action with this Court by issuing the four (4) misconduct reports and thereafter violated his procedural due process rights with regard to the processing of the misconducts and the hearings held in regard to them.  As relief, he seeks injunctive and monetary damages.

III.    Discussion

Defendants have moved to dismiss all claims, with the exception of the following, on the basis of failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a):

> (1) Plaintiff's claims against Defendants Bechdel, Stidd, Tennis, Dickson, Smith, Gentzel, Rackovan and Bitner for the denial of due process in connection with the disciplinary proceeding involving Misconduct # A903140;
>
> (2) Plaintiff's claims against Defendants Leidhecker, Kerns-Barr, Dickson, Smith, Lamas, Tennis and Mark for the denial of due process in connection with the disciplinary proceeding involving Misconduct #A919198; and

6

> (3) Plaintiff's claims against Defendants Kerns-Barr, Dickson, Smith, Lamas, Tennis and Mark for retaliation for exercising his rights under the First Amendment in connection with a disciplinary proceeding involving Misconduct #A919198.

Of the exhausted claims, Defendants then seek dismissal of the due process claims on the basis of failure to state a claim upon which relief may be granted.  They do not seek dismissal of the exhausted retaliation claim.  The court will now address the exhaustion issue as well as the due process claims.

### A.     Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S. Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  Woodford, 126 S. Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 2386.  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a

procedural default of the claim. Spruill, 372 F.3d at 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Jones v. Bock, 127 S. Ct. 910, 921 (2007). Failure to exhaust available administrative remedies is an affirmative defense. As such, it must be pleaded and proven by the Defendants. Id.; Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

Defendants maintain that Plaintiff has failed to exhaust the majority of his claims in accordance with the required procedures set forth in DC-ADM 801. In support of their argument they submit the declaration of John M. Andrade, Hearing Examiner Supervisor for the Pennsylvania DOC. (Dkt. Entry 23, Andrade Decl.) As Mr. Andrade explains, if an inmate is dissatisfied with a Hearing Examiner's decision, he is not permitted to file a grievance about either the charge or the decision. Rather, the inmate must appeal the decision using the procedures as set forth in DC-ADM 801, which provides for three levels of appeal. The first level is to the Program Review Committee, the second level is to the Superintendent, and the third and final level of review is to the DOC's Chief Hearing Examiner. (Id., Ex. A at 15-17.)

Appeals to the first and second levels of review must include a brief statement of the facts relevant to the appeal and may state any claims concerning violations of DOC directives, regulations or other law. The PRC and Superintendent are not required to address issues not raised or improperly raised by an inmate. (Id., Andrade Decl. ¶ 7; Ex. A at 15, 16.) An inmate seeking review at the final level must provide the chief hearing examiner with a brief statement

of all issues raised in the appeal and supply all documentation relevant to the appeal. (Id. ¶ 8; Ex. A at 17.)

All appeals filed by an inmate to the Chief Hearing Examiner along with the final decision of the Chief Hearing Examiner are placed in a file that is maintained by the Hearing Examiner Section of the Office of Chief Counsel. The absence of a file for an appeal from a decision involving a specific misconduct number reveals that no appeal was ever taken to the Chief Hearing Examiner. (Dkt. Entry 23, Andrade Decl. ¶ 9.)

The DOC has created an Automated Misconduct Tracking System for inmate misconducts and appeals. (Id., ¶10.) This system monitors information such as when a misconduct is issued, an inmate's plea, and whether the inmate submits a written version of the incident, the Hearing Examiner's decision, any sanctions imposed, and any information pertaining to appeals filed by the inmate to the PRC, Superintendent, and/or the Chief Hearing Examiner. Id.

In reviewing the tracking system with regard to Plaintiff, the records reveal that he filed no appeals to any level with regard to the Hearing Examiner's decision regarding misconduct #A903002. With regard to misconduct #A796051, Plaintiff did file an appeal to the first and second levels, but no appeal was taken to the final level of review. (Id., Andrade Decl. ¶ 15, Ex. D.)

Defendants next argue that with regard to misconduct #A903140, while Plaintiff did

9

pursue appeals through the three required levels, he only included his procedural due process issues in the appeals, and did not raise his complaint of retaliation at any level of appeal. (Dkt. Entry 23, Andrade Decl., Ex. C.)

As to the misconduct #A919198, Defendants state that Plaintiff did exhaust both the procedural due process claim through all three levels of appeal - the PRC, Superintendent and Chief Hearing Examiner - as well as raising the retaliation claim that the misconduct proceedings were a conspiracy to hinder or undermine his ability to litigate a pending civil rights lawsuit. (Id., ¶ 16, Ex. E.)

In responding to Defendants' exhaustion argument, Plaintiff admits that his due process/retaliation claims with regard to misconducts #A903002 and #A796051 are unexhausted, and seeks to voluntarily withdraw those claims. He also does not appear to dispute that he has not exhausted the retaliation claim with respect to misconduct #A903140.[3] As such, all of these claims will be dismissed for failure to exhaust available administrative remedies.

Remaining are the exhausted procedural due process claims regarding misconducts #A903140 and #A919198, and the exhausted retaliation claim regarding Misconduct #A919198. Defendants do not seek dismissal with regard to the retaliation claim and, as such,

---

[3] In fact, Plaintiff's brief in opposition to Defendants' motion to dismiss is solely focused on the procedural due process claims regarding Misconduct #A903140. (Dkt. Entry 30.)

this claim will proceed. Defendants do seek dismissal of the exhausted procedural due process claims based upon failure to state a claim. These claims will now be addressed.

### B. Due Process Claims

#### 1. Prison Disciplinary Proceedings

Plaintiff raises various exhausted procedural due process claims which include the failure to refer his misconduct charges for informal resolution, the timeliness of his misconduct hearing, the denial of witnesses and the sufficiency of the evidence to support the findings of guilt. False misconduct reports and procedural errors in a disciplinary proceeding do not in and of themselves trigger protection under the Due Process Clause – even if the inmate receives a disciplinary sanction as a result of the proceedings.

In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Prison conditions do not impact a protected liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Id. at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an

11

inmate would reasonably expect to encounter." McKeithan v. Jones, 212 Fed. Appx. 129, 130 (3d Cir. 2007)(citing Asquith v. Dep't. of Corrections, 186 F.3d 407, 412 (3d Cir. 1999); Griffin v. Vaughn, 112 F.3d 703, 706 & n.2 (3d Cir. 1997)). Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." Griffin, 112 F.3d at 709.

In deciding whether a protected liberty interest exists under Sandin, a federal court also considers the duration of the disciplinary confinement and the condition of that confinement in relation to other prison conditions. Mitchell v. Horn, 317 F.3d 523, 532 (3d Cir. 2003)(citing Shoats, 213 F.3d at 144). In this case, Plaintiff was sanctioned to thirty (30) days of disciplinary custody on misconduct #A903140. (Dkt. Entry 23, Ex. C, Disciplinary Hearing Report at 4.) With respect to misconduct #A919198, Plaintiff was sanctioned to sixty (60) days disciplinary custody and the loss of his prison job. (Id., Ex. E, Disciplinary Report at 2.) In a recent case, the Third Circuit Court of Appeals held that, where an inmate failed to allege that he was subjected to atypical conditions during his 930 day sentence to disciplinary confinement, he failed to show a deprivation of a cognizable liberty interest under Sandin. Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 207). If a sentence of 930 days in disciplinary confinement does not implicate a liberty interest, then certainly Plaintiff's sanctions, without any allegations of atypical or significantly harsh conditions of that confinement in relation to other prison conditions, do not implicate a liberty interest. Therefore, Plaintiff has failed to

12

demonstrate that he was entitled to due process protections with regard to his disciplinary confinement, and Defendants' motion to dismiss will be granted with respect to these due process claims.

2. Reparole Proceedings

Plaintiff also appears to contend that his due process rights were violated because the misconduct charges and the decisions of Defendants Tennis, Dickson and Smith to withdraw their support in favor of Plaintiff's reparole caused the Parole Board to rescind a previous decision to grant reparole. It is well established that there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Thus, absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural due process protections. Both the federal and Pennsylvania state courts have held that parole is not a constitutionally protected liberty interest under Pennsylvania law. Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996); Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319, 323 (Pa. 1999). Because Plaintiff cannot demonstrate that he possesses a liberty interest in parole, he has not demonstrated a violation of a protected constitutional right in connection with the decision to rescind his reparole date.

V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss the complaint in part will

be granted. All claims and Defendants will be dismissed in accordance with the above, with the exception of the retaliation claim pertaining to Misconduct #A919198 against Defendants Kerns-Barr, Glunt, Dickson, Smith, Lamas, Tennis, and Mark. An appropriate Order follows.

                                                                       <u>s/ Thomas I. Vanaskie</u>
                                                                       Thomas I. Vanaskie
                                                                       United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH WALTHOUR, :
:
       Plaintiff, : CIVIL NO. 3:CV-07-0528
:
  vs. : (JUDGE VANASKIE)
:
FRANKLIN TENNIS, et al., :
:
       Defendants. :

## O R D E R

NOW, THIS 24th DAY OF SEPTEMBER, 2008, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss the Complaint (Dkt. Entry 13), in part, is GRANTED. All claims and Defendants are dismissed, with the exception of the retaliation claim in connection with Misconduct #A919198 set forth against Defendants Kerns-Barr, Glunt, Dickson, Smith, Lamas, Tennis, and Mark.

2. The remaining Defendants shall file an answer to the complaint within twenty (20) days from the date of this Order.

                                    s/ Thomas I. Vanaskie
                                    Thomas I. Vanaskie
                                    United States District Judge